IGPUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JASON DELEON,

                                   Plaintiff,

                                                                    DECISION AND ORDER

                                                                    16-CV-6848L

                    v.

JOEL R. AYERS, et al.,

                                   Defendants.

_____


## INTRODUCTION

      Plaintiff Jason Deleon ("Deleon"), an inmate in the custody of the New York State
Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* civil
rights action on December 29, 2016 pursuant to 42 U.S.C. § 1983, alleging violations of his
constitutional rights in January and April 2014 while he was housed at Southport Correctional
Facility ("Southport").[1] (Dkt. # 1). Deleon's Second Amended Complaint, which is the operative
pleading, contains three causes of action – two alleging that he was subjected to excessive force
on separate occasions, and one alleging that he was denied due process during a disciplinary
hearing – against seven different DOCCS employees: Sgt. Joel Ayers ("Ayers"), Lieut. (now
Cptn.) John Bradley ("Bradley"), Correction Officer ("CO") Joshua Andrus ("Andrus"), CO

_____

[1] Deleon is still in the custody of DOCCS but has long since been transferred from Southport.

Jeffrey Harris ("Harris"), CO John Marshall ("Marshall"), CO Shawn Pierson ("Pierson"), and CO Anthony Spahalski ("Spahalski") (together, "defendants"). (Dkt. # 27).[2]

Defendants have moved for summary judgment seeking dismissal of Deleon's Second Amended Complaint in its entirety. (Docket # 47). Defendants claim that they are entitled to summary judgment on the merits of Deleon's claim, as well as because of Deleon's alleged failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a).[3]

Based on the parties' submissions on defendants' summary judgment motion, there appeared to be disputes concerning material facts relative to the exhaustion issue. Deleon claims, in substantial part, that he attempted to exhaust his administrative remedies but those remedies were "unavailable" to him.

Because of these factual disputes, by Order dated August 8, 2022 (Dkt. # 65), I directed that an evidentiary hearing be held to resolve these factual issues. I appointed an attorney for Deleon, who had been proceeding *pro se*, pursuant to Local Rule Civil Procedure 83.8, to represent Deleon for the limited purpose of participating at the evidentiary hearing on the exhaustion issue.

The evidentiary hearing was held on November 9, 2022. The Court took testimony and heard argument. Three witnesses testified, including the plaintiff.

The Court has reviewed the parties' submissions relating to the pending motions. For the following reasons, defendants' motion for summary judgment is granted.

---

[2] On October 18, 2019, the Court issued a Decision and Order (Dkt. # 31), accepting and adopting a Report and Recommendation issued by Magistrate Judge Jonathan W. Feldman (Dkt. # 29), allowing plaintiff to add certain defendants to the complaint, but denying his motion to add certain other defendants.

[3] Finding that a plaintiff failed to comply with the PLRA exhaustion requirements ends the litigation, as Congress intended. It is, therefore, unfortunate and surely inefficient that defendants waited nearly five years to move for relief based on Deleon's alleged failure to exhaust.

**DISCUSSION**

**A.     Exhaustion of Available Administrative Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citations omitted); *accord Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) ("[e]xhaustion is mandatory – unexhausted claims may not be pursued in federal court"). The PLRA also requires that an incarcerated individual "proper[ly] exhaust[]" administrative remedies, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quotations omitted) (emphasis in original).

The Supreme Court has recognized, however, that the PLRA's exhaustion requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642 (brackets omitted); *see also Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (PLRA contains "the significant textual qualifier that the remedies must indeed be available to the prisoner"). Administrative remedies are "available" for purposes of the PLRA's exhaustion requirement when they are "capable of use to obtain some relief for the action complained of." *Ross*, 578 U.S. at 642 (citation and quotations omitted).

On the other hand, the *Ross* Court identified three instances in which an administrative remedy is not "available" for purposes of exhaustion: first, when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to the aggrieved inmates";

second, when an "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," meaning that while "some mechanism exists to provide relief, . . . no ordinary prisoner can discern or navigate it"; and third, when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

Failure to exhaust administrative remedies is an affirmative defense, *see Williams*, 829 F.3d at 122, and when raised as a basis for summary judgment, the defendant "bears the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (brackets and quotations omitted). "Once defendant's burden of demonstrating an administrative grievance process exists [is satisfied], the burden shifts to the plaintiff to 'demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Karris v. Rodabaugh*, 2017 WL 7038199, *4 (W.D.N.Y. 2017) (citing *Hubbs*, 788 F.3d at 59), *report and recommendation adopted by*, 2018 WL 514204 (W.D.N.Y. 2018).

**B.   New York State Incarcerated Grievance Program Procedure**

In order to "properly exhaust" administrative remedies in New York, incarcerated individuals must generally adhere to and exhaust three levels of administrative review, a procedure known as the Incarcerated Grievance Program ("IGP") (formerly known as the Inmate Grievance Program) (*see* Dkt. # 47-5 at ¶ 2), which is codified at 7 N.Y.C.R.R. § 701.5 *et seq.*

The IGP's three-step procedure begins with an incarcerated individual filing a grievance within 21 calendar days of the alleged incident. *See* 7 N.Y.C.R.R. § 701.5(a)(1). The grievance is first heard and resolved by the Incarcerated Grievance Resolution Committee ("IGRC"). *See id.* at

§ 701.5(b). Within seven days after receiving an adverse decision, an incarcerated individual may then appeal the grievance to the superintendent, who has twenty calendar days from receipt of the appeal to issue a decision. *See id.* at § 701.5(c). Finally, the incarcerated may appeal the superintendent's decision to the Central Office Review Committee ("CORC") within seven calendar days after receiving the superintendent's decision, which then has thirty calendar days from receipt of the appeal to issue a decision on the grievance. *See id.* at § 701.5(d).[4]

Where – as here – the grievance alleges harassment, defined by DOCCS regulations as "employee misconduct meant to annoy, intimidate, or harm an inmate," *id.* at § 701.2(e), the IGP calls for an "expedited procedure for the review," *id.* at § 701.8. Specifically, on the same day an incarcerated individual files a harassment grievance, it is forwarded to the superintendent, who is charged with "promptly determin[ing] whether the grievance, if true, would represent a bona fide case of harassment." *Id.* at §§ 701.8(a), (b), (c). If not, the grievance is returned to the IGRC "for normal processing." *Id.* at § 701.8(c).

## C.     Factual Background Concerning January 23, 2014 Incident and April 21, 2014 Incidents

Based on the pleadings and papers filed on defendants' motion for summary judgment, some matters are not in dispute; those that are in dispute were explored at the evidentiary hearing.

---

[4] The regulations permit an incarcerated individual to request an exception to the time limit for both the filing of a grievance and the filing of an appeal to the superintendent and CORC. *See id.* at § 701.6(g)(1). The IGP supervisor may grant such a request "based on mitigating circumstances," but may not extend the time to file a grievance if made "more than 45 days after an alleged occurrence," and may not extend the time to appeal to the superintendent or CORC if made "more than 45 days after the date of the decision unless the late appeal asserts a failure to implement the decision." *Id.* at §§ 701.6(g)(1)(i)(*a*)-(*b*). Moreover, time limit extensions for IGP action "may be requested at any level of review (*e.g.*, time limits for holding an IGRC hearing, answering a grievance or am appeal, etc.), but such extensions may be granted only with the written consent of the grievant," and "[a]bsent such extension, matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g)(2).

### 1.      The January 23, 2014 Incident

Deleon alleges that on January 23, 2014, defendants Ayers, Andrus, and Harris assaulted him while he was handcuffed and being escorted from his cell to another housing location at Southport. (Dkt. ## 27 at 8-9; 47-1 at ¶ 4). Deleon claims that in an unprovoked attack, Andrus and Harris punched him in the ribs, and Ayers kicked him in the back of his legs and knees. (Dkt. # 27 at 8-9).

Deleon filed a grievance relating to this incident, which was dated January 27, 2014, and received by the IGP office at Southport on February 14, 2014 (the "January 2014 Grievance"). (Dkt. # 47-8 at 23-24). The January 2014 Grievance was assigned grievance number SPT-58121-14, and was designated with the code "49," meaning that the grievance dealt with "allegations of staff misconduct." (Dkt. ## 47-1 at ¶ 23; 47-5 at ¶ 15; 47-8 at 23). On February 25, 2014, Superintendent Wenderlich denied the grievance, finding it to be "baseless." (Dkt. # 47-8 at 23).

Deleon received the Superintendent's denial of his grievance no later than April 28, 2014, although the precise date on which he received the response is uncertain. (Dkt. ## 47-1 at ¶ 24; 47-5 at ¶¶ 23-26; 53 at 8). There is no dispute that the CORC did not receive an appeal from Deleon of the Superintendent's February 25, 2014 decision denying the January 2014 Grievance. (Dkt. # 47-1 at ¶ 24; *see also* Dkt. # 27 at 12).

The parties dispute *why* CORC never received an appeal of the January 2014 Grievance. Defendants suggest that Deleon simply did not submit a timely appeal, despite instructions printed on the Superintendent's response describing how to do so (*see* Dkt. # 47-8 at 22), and plaintiff's access to Southport's IGP supervisor Hanna Onifer (who made regular rounds at Southport, and

stated that she hand-delivered the Superintendent's response to Deleon), who was available to answer questions regarding the grievance process. (Dkt. # 47-5 at ¶¶ 16-32).

## 2.     The April 21, 2014 Incidents

Plaintiff alleges that on or about April 21, 2014, he was subjected to two separate incidents of excessive force (the "April 2014 Incidents"). (Dkt. ## 27 at 12-16; 47-1 at ¶¶ 5-6, 10). Plaintiff alleges that during a multi-day disciplinary re-hearing relating to events that occurred in January 2014, defendants Ayers and Marshall assaulted him in the hearing room while defendant Bradley, who oversaw the re-hearing, watched and encouraged the assault. (Dkt. ## 27 at 13; 47-1 at ¶ 6). In addition, after plaintiff was returned to his cell that day, he alleges that he was again assaulted, this time by defendants Ayers, Marshall, Pierson, and Spahalski, following plaintiff's apparent refusal to cooperate with the removal of his handcuffs. (Dkt. ## 27 at 13-15; 47-1 at ¶ 10).

Plaintiff submitted a grievance related to the April 2014 Incidents to the IGRC at Southport on July 17, 2014 – 87 days after the incidents – which was denied and returned as untimely. (Dkt. # 47-1 at ¶¶ 28, 31). Plaintiff acknowledges that this grievance was denied as untimely, and that he did not appeal this decision. He claims, however, that he had been attempting to file the grievance for "nearly 3 months" before it was eventually filed, but that "the [IGP] staff [at Southport] would not file [his] grievance." (Dkt. # 27 at 13; *see also* Dkt. # 53 at 11.

Although the disciplinary rehearing initially resulted in the imposition of disciplinary measures against plaintiff – specifically, service of eight months in the special housing unit ("SHU") – the hearing's findings were later reviewed and reversed, before any of the imposed SHU time was served.

**D.      Discussion: Failure to Exhaust Administrative Remedies**

In papers opposing summary judgment, Deleon does not dispute the ultimate fact that he failed to exhaust his grievances through the entire three-step IGP process. Rather, he claims that his administrative remedies were "unavailable" to him based on the actions of staff at Southport.

Because there were factual disputes with respect to the circumstances of plaintiff's attempts to exhaust his administrative remedies, this Court conducted an evidentiary hearing. (Dkt. # 70). Plaintiff appeared and testified, as did defendants' witnesses, IGP Director Rachel Seguin, and former IGP Supervisor Onifer. In particular, plaintiff testified concerning his extensive history of, and familiarity with, successful engagement in the grievance and appeal process, both before and after the complained-of events.

Seguin testified concerning the relevant DOCCS directives which implement the IGP. (Exh. 1). She also testified concerning plaintiff's specific history of successfully-filed grievances and appeals, including two timely appeals in 2014 concerning matters *other* than the January 2014 Grievance and April 2014 Incidents that are at issue in this action. (Exh. 2). She also noted that plaintiff had been sent the Superintendent's response to his grievance concerning the January 2014 assault (Exh. 3) at least twice by mail, and a third time by hand-delivery, after he complained that he had not received it initially.

Seguin also testified concerning correspondence from plaintiff to IGP Director Karen Bellamy on July 21, 2014, in connection with an attempt to grieve the April 2014 assault. (Exh. 4). Although plaintiff stated in a cover letter that he was enclosing an "original copy of [a] grievance that I've been attempting to file since April," the enclosure was a handwritten grievance dated July 15, 2014. As such, the grievance was rejected as untimely. *Id.*

Onifer also testified concerning Southport's procedures for collecting mail in SHU. According to Onifer, an inmate wishing to file a grievance could hand it to her directly during her weekly rounds, or else send it through the mail. Daily mail procedures consisted of a corrections officer circulating each evening with a cart containing a lockbox for mail, and collecting mail from inmates to place in the box. An IGP representative would later collect it, and turn it over to clerks for coding (based on the subject matter of the grievance), filing and processing. A receipt would be sent to the inmate 2-3 days later. (A redacted exemplar grievance and receipt was submitted as Exh. 6). Onifer testified that her office received approximately 2,000 grievances per year.

Onifer noted that from 2014 through 2018, plaintiff had successfully filed twenty-two (22) grievances using these procedures. (Exh. 5).

Plaintiff testified that the procedure for mailing grievances or appeal paperwork from the SHU at Southport involved making a carbon copy of the paperwork, placing it into an envelope, addressing and signing it, and handing it over to an officer who brought a mail cart around at night. He further indicated that he had engaged in this procedure multiple times when he attempted to timely appeal the denial of his initial grievance, and to timely grieve the April 21, 2014 assaults, but that he never received a response to any of those mailings. In correspondence to IGP Director Karen Bellamy on July 21, 2014 (Exh. 4), plaintiff indicated that he was attempting, for the fourth time "since April," to grieve the April 21, 2014 assault, and attached a handwritten grievance, dated July 15, 2014. At the hearing, plaintiff testified that he had made the three prior filing attempts to which the letter alluded, and had possessed carbon copies of those grievances at one time, but was unable to produce them, because they had all been discarded by Southport personnel, during one or more cell searches. Plaintiff was unable to specify the dates upon which such mailing attempts were made, or the staff members to whom the mailings were given.

E.      **Evidentiary Hearing: Findings of Fact and Decision**

Upon consideration of the evidence submitted, the Court finds that plaintiff has not met his burden to "demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Karris*, 2017 WL 7038199 at *4. It is clear that plaintiff is an experienced and sophisticated user of IGP procedures, and has successfully mailed grievance and appeal paperwork dozens of times throughout his incarceration, including on at least twenty other occasions at Southport.

That plaintiff's mailings and photocopies concerning the specific appeal and grievance at issue here – and *only those two matters* – would have repeatedly gone missing, while all of plaintiff's other grievance and appeal-related mailings did not, strains credulity. *See Murray v. Palmer*, 2010 WL 1235591 (N.D.N.Y. 2010)(while failure of prison staff to deliver mailings could constitute special circumstances justifying an inmate's failure to exhaust administrative remedies, such failure is not established, and plaintiff's testimony that his mailings went missing is not credible, where the plaintiff was able to successfully file multiple other grievances at the same facility, which were received and responded-to). *See generally Lapierre v. Lavalley*, 847 F. App'x 47, 49-50 (2d Cir. 2021)("shifting and contradictory" statements concerning mailings alleged to have gone missing "transcend credibility concerns and go to the heart" of whether an inmate has raised a genuine issue of material fact as to exhaustion). In short, I find that plaintiff's administrative remedies were not unavailable to him.

Because it is undisputed that plaintiff failed to exhaust his administrative remedies with respect to the January 2014 Grievance and April 2014 Incidents upon which this action is premised, and because I find that plaintiff has not shown that special circumstances made his administrative remedies unavailable to him, plaintiff's excessive force claims are dismissed, in their entirety.

F.      **Deleon's Due Process Claim**

While not delineated as a separate claim, plaintiff alleges that the April 2014 misbehavior re-hearing against him, conducted by defendant Bradley, deprived him of due process, because Bradley was not impartial, having previously investigated plaintiff's grievance, and having ultimately permitted plaintiff to be assaulted by other defendants. At the conclusion of the rehearing, Bradley determined that plaintiff was guilty of two disciplinary charges against him, and determined that plaintiff should serve eight months in SHU.

Defendants move for summary judgment dismissing Deleon's due process claim, on the grounds that plaintiff did not suffer any harm as a result of the alleged violation. Specifically, Bradley's findings from the April 22, 2014 Superintendent's hearing were reviewed, and reversed, on or about June 24, 2014, before plaintiff began serving any of the SHU time that had been imposed.

"As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property." *Ocasio v. Deluke*, 2010 WL 6001595, *16 (N.D.N.Y. 2010), *report and recommendation adopted by*, 2011 WL 864898 (N.D.N.Y. 2011), *aff'd*, 468 F. App'x 89 (2d Cir. 2012) (summary order).

Here, assuming *arguendo* that the imposition of a period in SHU as a result of the April 22, 2014 hearing was the result of a due process violation that *would have* deprived plaintiff of a liberty interest had he served some of that time, any error therein was harmless, as the disciplinary findings were reversed before service of the SHU time commenced. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995)(due process violation can occur where conditions of incarceration impose "atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life"); *Williams v. Keane*, 1997 WL 527677 (S.D.N.Y. 1997)(collecting cases, and observing that

"the decisions in the Second Circuit are unanimous that keeplock or SHU confinement of 30 days or less in New York prisons is not 'atypical or significant hardship'" sufficient to support a due process claim).

Plaintiff makes no argument that the alleged due process violations caused a "significant hardship," or otherwise resulted in any cognizable loss of a protected liberty interest. Plaintiff's due process claims must accordingly be dismissed.

**G.      DeLeon's Request For Additional Discovery and Leave To Supplement Filings**

Plaintiff has requested additional discovery, in the form of a Facility Operating Manual from Southport Correctional Facility, and seeks permission to amend and supplement his opposition to defendants' instant motion for summary judgment. (Dkt. # 56 at 4-5).

Because plaintiff's underlying claims are dismissed, his request for additional discovery and supplemental filings is denied as moot.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Dkt. # 47) is granted. Plaintiff's claims are hereby dismissed in their entirety, with prejudice. Plaintiff's request for additional disclosure and/or supplemental filings is denied. The Clerk is directed to close the case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        January 12, 2023.

12